LAWRENCE v. HOLMES, BOOTH & HAYDEN.

(*District Court, D. Connecticut. February 28, 1891.*)

1. PATENTS FOR INVENTIONS—MARKING UNPATENTED ARTICLE.

Letters patent No. 162,184, April 20, 1875, for a metallic paper fastener, were for a T-shaped fastener, with a round button cap-shaped head, with folded or struck-up edges, the whole made complete out of one piece of metal. Letters patent No. 286,-143, October 2, 1883, consisted of a double-bladed shank with slightly dull rounded points, and a section only of the T-shaped shoulders was indented. The second and third specifications called for a metallic T-shaped fastener, having a folded head with indentations, and the same in combination with a metal cap closed upon the folded head. *Held,* that the patents did not embrace fasteners consisting of a double-bladed shank, and T-shaped shoulders not indented, with a button head made of a separate piece of metal tightly placed on the shoulders.

**2. SAME.**

A patentee and manufacturer of an article sold out to defendant company, and furnished it with the form and style of label, with dates of patents printed thereon, to use on the boxes containing the article. The label called for a patent which did not include the article manufactured. Defendant had no actual knowledge of the fact, but relied on the advice and opinion of the patentee, who was a patent solicitor, and had a desk in its office. Afterwards he became a director, and the labels continued to be used. *Held,* that defendant was not affected by the patentee's knowledge.

At Law.

Action to recover a statutory penalty. Jury waived, and case submitted, by consent of parties, to N. SHIPMAN, as referee.

*George G. Sill* and *H. D. Donnelly,* for plaintiff.

*Stephen W. Kellogg,* for defendants.

SHIPMAN, Referee. The above-entitled cause having been by agreement and consent of the parties thereto, as evidenced by their written stipulation on file, referred to the undersigned to find the facts and report the same to the court, the undersigned, in pursuance of said stipulation, heard said parties on the 13th and 14th days of January, 1891, with their witnesses, who were duly sworn, and by their respective counsel, George G. Sill and H. D. Donnelly for the plaintiff, and Stephen W. Kellogg for the defendant, and hereby reports that he found the following facts to have been proved and to be true. His conclusions of law upon said facts are also stated herein.

The action is an action at law, which was brought under section 4901 of the Revised Statutes, to recover the statutory penalties incurred for stamping, as patented, manufactured articles which were unpatented, with intent to deceive the public. The defendant is a corporation, which has been duly incorporated under the laws of Connecticut, and is located in the town of Waterbury, in said state, and is a large manufacturer of the brass paper fasteners known as "McGill's Fasteners." In the years 1888, 1889, and 1890 said company made and sold 10,000 paper boxes of paper fasteners, each box containing one hundred fasteners, and each box was stamped by the defendant with the following words and figures: "McGill's Fasteners. Patented, April 20, 1875, Jan. 8, 1878, Oct. 2, 1883, by Geo. W. McGill." This is the label upon which the complaint is based. In 1890, the defendant put up this kind of fasteners in brass boxes, each brass box being stamped, "McGill's Fasteners, Pat'd by G. W. McGill, 1875, 1876." Upon the back of each box are stamped the following:

"McGill's Fasteners.
100 Varieties.
Pat'd
April 20, 1875, Aug. 21, 1877, Jan. 8, 1878, April 19, 1878,
Oct. 2, 1882, Apr. 25, 1884, Mar. 2, 1886."

The United States issued to George W. McGill four letters patent, Nos. 162,182, 162,183, 162,184, and 162,185, each one dated April 20, 1875, and letters patent No. 199,085, dated January 8, 1878, and No. 286,143, dated October 2, 1883, and, before 1875, had also issued

to said McGill at least two other patents for brass fasteners, the same being Nos. 56,587, of July 24, 1866, and 60,250, of May 28, 1867.    By written contracts between said McGill and the defendant, dated March 21, 1876, and July 23, 1883, the defendant became sole licensee to manufacture paper fasteners under the said McGill patents.    It is admitted by the defendant that No. 162,184 and the second and third claims of No. 286,143 are the only patents named in said label in which the fasteners in controversy are described and claimed.    No. 162,184 was an improvement upon 56,587, which was for a paper fastener " formed by a single piece or strip of metal, bent in a T shape, the ends of the strip being in close contact and pointed, so as to make only a single hole in the papers which it is designed to connect."    No. 162,184 consisted of a T-shaped fastener, with a round button cap-shaped head, made complete from a single piece of metal.    The entire blank was made of one piece of metal, which was afterwards bent and swaged into a fastener with a button head.    The claim of this patent was for "a metal fastener, having a button head, with folded or struck-up edge, and constructed in other respects substantially as herein set forth and described, for the purposes specified."    The fastener of No. 286,143 had a double-bladed shank, with a slightly dull rounded point and curving.    A section of each end of the T-shaped shoulders was struck or pinched and indented, by reason of which the shanks of the fastener were brought in close parallel contact with each other.    Emphasis is placed upon the fact that the pinching is not applied to the entire fold of the metal.    The second and third claims are as follows:

"(2) A metallic T-shaped fastener, having a folded head, provided with indentations, *c, c,* to hold the blades of its double shank in close parallel contact with the point of one projecting beyond the other, substantially as described. (3) A metallic T-shaped fastener, having a folded head, provided with indentations, *c, c,* to hold the blades of its double blank in close parallel contact with each other, in combination with a metal cap closed upon the folded head, substantially as described."

Each brass fastener in the stamped paper boxes which are the subject of this controversy had a double-bladed shank and T-shaped shoulders, upon which a separate button head was placed.    This button head was tightly placed upon the shoulders of the shank, and the effect was to prevent the blades of the fastener from springing apart.    This fastener was not made from a single piece of metal, and the section of the shoulders was not struck and indented.    A competent expert is of the opinion, and testified, that the claim of No. 162,184 did not require the fastener to be made from a single piece of metal, and that the tightly placed button, whereby the blades were kept from springing apart, was an equivalent for the indentations upon the folded head which are described in the second and third claims of 286,143.    My conclusion of law, from the facts hereinbefore stated, is that the claims of said two patents do not include and describe the fastener in controversy.

Samuel H. Willard was the general manager of the defendant in 1875, and was instrumental in getting it to enter upon the business of manu-

facturing the fasteners of McGill, and getting him into the company. Mr. Willard continued actively in the management of the defendant until 1887. From 1881 to 1887 he had charge of its New York store, where all the goods were sold. McGill has had a desk in the New York store since it has been at No. 25 Chambers street. When the defendant moved to Chambers street was not stated. After the contract of March 21, 1876, McGill furnished the defendant with the form, style, and dates of all the original labels which they used upon paper fasteners. The original matter of the label in controversy, and the dates, were furnished by him while Mr. Willard was in the New York store. No original label was gotten up without consultation with him. McGill was a patent solicitor, was the patentee and the licensor, and the defendant and Mr. Willard relied upon him for information in regard to all the details connected with these patents, supposed that they were valid, and that the articles in these boxes were being manufactured under the patents, the dates of which were furnished by McGill. The executive officers took it for granted that the fastener business was properly conducted, so far as patents and stamps were concerned. McGill became a director in the defendant corporation in 1884, and continued to be such by successive annual re-elections, until and including 1890. He never was an agent of the defendant. There was no lack of good faith and no intention to deceive the public on the part of the defendant, unless McGill knew that his patents did not include the fasteners in the boxes, and his knowledge is to be held to have been the knowledge of the defendant. The case, upon the part of the plaintiff, turns upon McGill's knowledge and its effect, because it is virtually conceded that the executive and administrative officers of the defendant had no knowledge or opinion resulting from their own investigation of the subject. Inasmuch as Col. Earle, a very competent expert, has testified that, in his opinion, the fasteners are included in the claims of 162,184 and 286,143, it cannot be found that McGill knew, or had reason to know, the contrary. It would be very natural that he should coincide in that opinion. As he was a patent solicitor, and was well acquainted, not only with his own inventions, but with the patents which described them, and with the significance of the claims of a patent, and as it is substantially admitted that No. 199,-085 does not describe the fasteners in controversy, it follows that he must have known that the date of January 8, 1878, should not have been placed upon the boxes. I do not consider it incumbent upon me to consider the legal effect of stamping an article as patented under three patents, with the dates thereof, when the article was believed by the person who authorized the stamping to be patent. d under two only of the patents, but prefer to confine myself to a report in regard to the effect of McGill's knowledge upon the defendant, upon the assumption that, if it had an effect, it would be prejudicial. This knowledge was acquired, and the boxes began to be stamped with the dates which have been described, before he became a director in the defendant company. What he originated with respect to the stamps upon the boxes in controversy was not done as a director, but before he became such. In the

suggestions, advice, and directions which he gave in regard to the labels, he was not acting as an agent of the company; he was acting in connection with it, for his own benefit as licensor, upon business in which both he and the company were mutually interested. It asked and obtained his directions, because he was interested in the success of the business, and, it supposed, had the requisite knowledge to give proper information. The knowledge which he then or afterwards had was not acquired or used while he was acting for the company in the capacity of an agent or as one of its directors.

Three questions of law arise upon the foregoing facts.

1. Is the defendant corporation affected or bound by the knowledge of McGill, who has been, since 1884, a director of the corporation? His knowledge is not the knowledge of the defendant, because the knowledge of a director does not affect the corporation, unless in a matter wherein he is acting officially as a director, or is engaged in its behalf in its business. "In order to affect a corporation by the knowledge of a fact by one of its directors, it is necessary he should have such knowledge, while acting officially, in the business of the corporation, unless he is acting at the same time under some special authority, conferred on him, other than what he would possess as merely one of the directors." Beach, Joint-Stock Corp. 69; *Bank* v. *Payne*, 25 Conn. 444; *Platt* v. *Axle Co.*, 41 Conn. 255; *Bank* v. *Davis*, 2 Hill, 451; *Winchester* v. *Railroad Co.*, 4 Md. 231; Story, Ag. (6th Ed.) § 140*b*.

2. Does the general rule that a person must be held to intend the necessary consequences of his acts require a conclusion against the defendant, it having been found that the labels were untrue, and that they were affixed to the boxes of the defendant? The rule applies to acts knowingly or consciously done, and, if the defendant knew or had adequate reason to know that its labels were untrue, it would be presumed to have intended the necessary consequences of the acts. The fact that the label was untrue does not preclude a defendant from showing that he had adequate reason to believe that it was true, and that he had taken competent and authoritative advice upon the subject.

3. Was the defendant corporation justified in relying upon the declarations of McGill, when an independent investigation would have shown that one of the named patents did not include the fasteners in the labeled boxes? Without considering the question whether a licensee can always be at liberty to follow, with impunity, the advice or suggestions of the patentee in regard to stamps upon articles claimed to have been patented, without an independent investigation, in this case McGill had not only taken out many patents upon this class of articles, but he was reputed to be a patent solicitor, and he certainly drew some of his own patents. The confidence which the defendant's manager placed in him, and which led to an adoption of the labels without personal examination of the patents, cannot be considered adequate evidence of the carelessness or recklessness in regard to representations which constitute fraud. The plaintiff offered in evidence the file-wrappers and contents of letters patent Nos. 162,183, 162,184, 286,143, and 308,368. The file-wrap-

per and contents of 162,183 were offered for the purpose of showing that McGill admitted, in 1874, that the fasteners in the boxes were public property, and that he had full knowledge of the whole subject. The other file-wrappers and contents were offered to show that McGill took out his own patents, was a shrewd patent lawyer, and his knowledge was imputable to the defendant. For the purposes offered, the defendant objected to the admission of all these papers; which objection was sustained, and all said papers were excluded for the purposes for which they were offered; to which ruling the plaintiff then and there duly excepted. An examination of the testimony shows that, theretofore, the file-wrapper and contents of 286,143 had been offered and admitted without exception.