HARRY GERMANOW and JULIUS SIMON, Copartners, Doing Business under the Name and Style of GERMANOW-SIMON MACHINE COMPANY, Plaintiffs, v. STANDARD UNBREAKABLE WATCH CRYSTALS, INC., Defendant.

Supreme Court, Monroe County, April 27, 1938.

*Byron A. Johnson*, for the plaintiffs.

*Cumpston & Shepard* [*Edward H. Cumpston* and *Benjamin N. Brody* of counsel], for the defendant.

WHEELER, J. This action is brought to restrain various trade practices of defendant, alleged to constitute unfair competition. Plaintiffs claim that defendant in its methods of doing business, in its methods of competition with plaintiffs, has engaged in unfair trade practices.

The plaintiffs, a copartnership doing business under the name and style of Germanow-Simon Machine Company of Rochester, and the defendant, Standard Unbreakable Watch Crystals, Inc., a domestic corporation, having its principal office in the city of New York, are both engaged as competitors in the manufacture and sale of unbreakable watch crystals made from celluloid rather than glass. Both the plaintiffs and defendant sell to retail jewelers, who in turn sell the crystals to the public as replacements for broken crystals.

This particular type of crystal is not patented, so the questions here involved are entirely free of any considerations arising out of patent rights. Neither does the action involve any claimed infringement of a trade-mark.

Unbreakable crystals had been manufactured by at least one watch company for its own watches prior to the time plaintiffs started in business in 1916. However, the plaintiffs were undoubtedly pioneers in the manufacture and sale of unbreakable crystals for replacement purposes. From a modest beginning the plaintiffs as a result of their ingenuity, skill, labor and money, and by the use of nation-wide advertising facilities, such as magazines and radio, have succeeded in expanding and developing a very substantial business, both in the United States and in foreign countries.

The crystal replacement business, whether in glass or in celluloid, is, with one exception, confined to a group of manufacturers that do not manufacture watches. The watch manufacturers and crystal replacement manufacturers are not, therefore, in competition with each other.

The defendant began the manufacture of these crystals in competition with plaintiffs and others in the year 1927, at which time the consumer demand for the product was well established throughout the country. It is apparent that defendant soon found that retail jewelers, to a large extent, were already stocked with plaintiffs' crystals, which were contained in specially constructed cabinets having a unique lettering and numbering system, adapted to the ever-increasing number of shapes and sizes of the crystals made for the various makes and types of watches. Notwithstanding the fact that defendant's product sold for substantially less than plaintiffs', competition with plaintiffs had its difficulties, as jewelers were quite naturally averse to carrying more than one system. As a result of this type of competition, plaintiffs claim that defendant has become an imitator of no mean ability, and has adopted from plaintiffs innumerable trading practices, which plaintiffs contend constitute unfair competition.

More specifically, plaintiffs claim that defendant has adopted envelopes for round crystals of identical size, shape and color to those used by the plaintiffs for the same purpose; a ribbed glassine envelope similar to plaintiffs'; a duplicate in size and color of the small envelope which is inserted in the glassine envelope; that it has adopted the identical gauge and resulting size numbers for round crystals; that it has built its number system upon that of plaintiffs'; that it has made use of a comparative list, and printed plaintiffs' number system upon its envelopes.

Plaintiffs assert that these things were not coincidences, but on the contrary were done for the definite purpose of placing in the hands of the jeweler the machinery necessary to effect a passing off of defendant's product for that of the plaintiffs', to effect a substitution of defendant's crystals for plaintiffs' crystals when ordered by customers.

The development of the law relating to unfair competition is of relatively recent origin, and is largely a result of the ever-changing economic conditions incident to our system of competitive enterprise. It has been said that the law of unfair competition is not static, but active. Its usefulness and effectiveness is in its flexibility, and its capacity to adapt itself to changing conditions.

In its application it is essential to keep in mind two underlying principles, which have prevailed throughout the expansion of our economic system. On the one hand we have to consider the economic dangers arising out of monopoly, and on the other the absolute necessity of maintaining free and unfettered competition in the business world. Many of the attending difficulties in any particular situation of this character arise out of the attempt to curb the use of oppressive and unfair methods of competition, without at the same time violating either of these broad fundamentals. For the purpose of resisting " chiseling " and other barbarisms in the business world we have witnessed the rise and fall of the late lamented " N. R. A." Its demise, however, should not leave business in a state of helplessness against unfair practices of this character. It is more preferable to use the equitable power of the courts rather than to resort to a drastic code designed to place all business in a veritable straight jacket.

In the present case it is substantially conceded that defendant has used portions of the system and method used or originated by the plaintiffs. The defendant attempts to justify these practices on the broad ground that they are simply methods of competition in this particular industry, which may be used by any one, and that the plaintiffs have no exclusive rights therein. The defendant points out very properly that trade-mark infringements are not involved, and it also sets forth as a defense the claim that there has been no passing off to the public of defendant's product as that of the plaintiffs'. It is defendant's theory that these particular elements are conditions precedent to the relief which plaintiffs seek.

It must be conceded I think that such undoubtedly was the law during the stages of its earlier development. However, later decisions seem to indicate that neither of these elements is any longer an essential feature of an action of this nature.

As indicative of this change, attention is called to the opinion of Mr. Justice HUGHES in the now famous *Schechter Corp.* v. *United States* (295 U. S. 495, 532): " In recent years, its scope has been extended. It has been held to apply to misappropriation as well as misrepresentation, to the selling of another's goods as one's own, to misappropriation of what equitably belongs to a competitor."

Nims in his latest book (Unfair Competition and Trade-Marks [3d ed.], p. VIII) says: " These cases have been decided, not by the application of abstruse technical legal doctrines, but by the application of the same simple standards of right and wrong that are recognized and applied by the public in daily life outside of the court house."

On page 5 of the book he makes this further comment: " In 1904 the Seventh Circuit Court of Appeals said: ' Even if there is no attempt by defendant to palm off its goods as those of plaintiff, does it necessarily follow that defendant is not unfairly competing? The right to equitable relief is not confined to cases in which one man is selling his goods as those of another.' "

Again the change in judicial attitude is illustrated by the decision of the United States Supreme Court in the case of *International News Service* v. *Associated Press* (248 U. S. 215), where the court said: " The question here is not so much the rights of either party as against the public but their rights as between themselves. * * * It is said that the elements of unfair competition are lacking because there is no attempt by defendant to palm off its goods as those of the complainant, characteristic of the most familiar, if not the most typical, cases of unfair competition. * * * But we cannot concede that the right to equitable relief is confined to that class of cases."

In commenting on the *International News Service* case Nims makes this significant observation (p. 6): " This decision established beyond question that the law of unfair competition is broader than passing off."

The United States Supreme Court again adopted the same reasoning in the case of *Warner & Co.* v. *Lilley & Co.* (265 U. S. 526). Here the court denied relief on the theory of trade-mark infringements, but arrived at a different result on the theory of unfair competition. The court said: " That no deception was practiced on retail dealers, and that they knew exactly what they were getting, is of no consequence. The wrong was in designedly enabling the dealers to palm off the preparation as that of respondent."

It is believed that the above quotation is particularly applicable to the situation presented in the instant case. Here the defendant has by a process of imitation and adoption of plaintiffs' methods, set up the machinery by which retail dealers may palm off on the public its crystals as those of the plaintiffs.

In considering the degree of defendant's infraction of the rules of fair trade, it becomes necessary to examine a progressive series of acts rather than an isolated instance. However unfair many of

defendant's acts appear to be, it does not necessarily follow that plaintiffs are entitled to restrain them all, or that plaintiffs are entitled to a property right or monopoly in their entire system of doing business.

These many acts of defendant, considered together, indicate a studied and avowed purpose on the part of defendant to appropriate unto itself the plaintiffs' business and good will by unfair means. The secondary question before the court relates to the extent to which the equitable power of the court should be applied.

Both plaintiffs and defendant manufacture innumerable shapes and sizes of crystals to fit hundreds of various makes and types of watches. Necessarily both must resort in a general way to the same type of merchandising system. The crystals of each are contained in small envelopes of equal size, which in turn are placed in cabinets with a convenient system for selecting the proper size crystal. Plaintiffs at first used a blue envelope for this purpose. The defendant followed with a blue envelope. Plaintiffs adopted ribbed glassine envelopes, and defendant followed with the same type. Should defendant be restricted from using this same size, type and color of envelope as that used by the plaintiffs? I am of the opinion that it should not. Mere color is not an indication of origin, and is incapable of exclusive appropriation as such. (*Matter of Waterman Co.*, 34 App. D. C. 185; *Diamond Match Co.* v. *Saginaw*, 142 Fed. 727; Shoemaker on Trade-Marks, pp. 163–166.) Furthermore, if defendant were compelled to change the color of its envelopes, such change might result in the use of the same colors as are used by other competitors.

Neither should defendant be precluded from using the type of measuring gauge described in the proof. It is true that the gauge was originated by plaintiffs as a unique scale for measuring round crystals. The zero began one-half inch from the end instead of at the end, as in the ordinary ruler. The gauge is divided in units of one-fortieth of an inch, and is, therefore, based on a system of measurement common to all, and should not be monopolized.

The remaining factor to be considered involves the alleged appropriation by defendant of plaintiffs' number system. The idea of a number system is not claimed to have been originated by plaintiffs. In fact each of the various crystal manufacturers has developed a separate and distinct number system of its own. It is a common practice for all of these manufacturers to illustrate a crystal, and state its actual dimensions on the envelope in which it is contained, as well as in the accompanying catalogue. In addition there usually appears a distinctive arbitrary number which has no relation to the size or quality of the particular crystal. Each of

the various manufacturers stresses its own particular number system as a distinctive feature definitely associated with its own individual product. In order to locate the particular crystal for a particular watch, it is essential that the jeweler have available a number system by the use of which he can locate from his stock the particular crystal designed to fit the watch before him.

At an earlier period defendant adopted its own particular system, which had no relation whatsoever to the system then used by plaintiffs. In 1931 plaintiffs developed a new number system, also distinctly its own. Its catalogues and cabinets were arranged to conform to this new system. Thereafter the defendant issued to the trade a so-called number system of its own. In this new system defendant has disingenuously appropriated plaintiffs' system. Defendant's number for each crystal appearing in the two systems is exactly two hundred less than the number appearing in plaintiffs' system for the same crystal. In other words, the numbers are identical when two hundred is added to defendant's number for a given crystal. By this means defendant has been able to appropriate to its own benefit and use the system which plaintiffs have created for their own use and benefit. It utilized the system created by plaintiffs to sell its own competing crystals.

Furthermore, defendant issued at the same time a comparative list which made it extremely simple for a jeweler to readily substitute defendant's crystals for those of plaintiffs. But the defendant did not stop at this point. It has placed upon its own envelopes the actual plaintiffs' number designating the particular crystal contained in the envelope. The notation appearing is " Same size as G-S——." Since this action was started defendant has eliminated the trade-mark " G-S " from its envelopes, and simply placed thereon " Same size as——."

It seems perfectly obvious that defendant intended by the use of plaintiffs' number system to capture for itself the benefits of plaintiffs' reputation and plaintiffs' creation. It is a plain case of unfair competition, and it, therefore, follows that the defendant should be restrained.

Similar relief has been granted to these plaintiffs in the case of *Germanow-Simon* v. *Glazer* (unreported), decision being by Mr. Justice CUNNINGHAM. (See, also, *Brown* v. *Braunstein*, 83 N. Y. Supp. 1096; *Mecanno* v. *Wagner*, 234 Fed. 912; *Meyer* v. *Hurwitz* 5 F. [2d] 370; *Searchlight Gas Co.* v. *Prest-O-Lite Co.*, 215 Fed. 692.)

There is of course a well-recognized line of cases which in effect hold that a manufacturer of replacement parts of a machine, or other product, may use the same letters and numbers as those affixed and used upon the same parts by the original manufacturer

The following are typical illustrations: *Deering Harvester Co.* v. *Whitman & Barnes Mfg. Co.* (91 Fed. 376); *Dixie Vortex Co.* v. *Lily-Tulip Cup Corp.* (19 F. Supp. 511); *Electric Auto-Lite Co.* v. *P & D Mfg. Co.* (78 F. [2d] 700).

The above cases are apparently based upon a commercial or utilitarian necessity. If replacement manufacturers were to be restrained from referring to the number system and size marks used by the original manufacturer of the machine, a practical barrier would be established making it impossible for other manufacturers of parts to compete with the original manufacturer in replacements. Such a ruling would give the original manufacturer a virtual monopoly in the replacements to his product.

In the present case no such utilitarian necessity is present. All of these crystal manufacturers necessarily refer to the specific make and type of watch as listed by the original manufacturers thereof. There is no necessity whatsoever of any one competitor in the replacement field referring to the number system of another. It is this distinction which differentiates the case at bar from those above cited.

Some question has arisen as to whether or not the making of a comparative list is a common custom in this industry. Isolated instances of its use have been proven. However, the proof in my opinion falls short of establishing a custom. There being no necessity for it, its use in the manner proven should be discontinued.

From the same reasoning it follows that the defendant should be restrained from printing plaintiffs' number system on its envelopes or other literature.

It is believed by this court that a decision along the lines herein indicated will accomplish a threefold object. *First*, it will protect the plaintiffs in the business which fairly belongs to them; *second*, it will serve to penalize defendant, who is taking his competitor's business away by unfair means; *third*, it will protect the public from deception.

Plaintiffs are entitled to judgment to the extent indicated, with costs. Appropriate findings may be submitted.