### ENTERPRISE MFG. CO. OF PENNSYLVANIA v. LANDERS, FRARY & CLARK.

(Circuit Court, D. Connecticut. July 1, 1903.)

#### No. 993.

1. UNFAIR COMPETITION—COPYING MANUFACTURED ARTICLE—IMITATION OF DRESS.

Any manufacturer has the right to copy an article made by another which is not protected by patent, but he has not the right to so imitate it in shape, design, color, and number as to deceive purchasers of average intelligence and cause them to mistake his product for that of the prior manufacturer.

2. SAME.

Complainant for many years made and sold coffee mills of different sizes, each having a distinguishing number, but all of a distinctive shape, design, and color by which they became known to the public and acquired a high reputation and a large sale. Defendant, later, began the manufacture of mills of exactly the same pattern, admittedly copying those of complainant in shape and design, and even in coloring, the only distinction being in the numbers used, which were also similar, and in the initials and address of the maker, which were not conspicuous. It was shown that purchasers had in fact been deceived, and had bought and used defendant's mills supposing them to have been made by complainant. Held, that such action constituted unfair competition, against which complainant was entitled to an injunction.

In Equity. Suit to enjoin unfair competition. On final hearing.

¶ 1. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

Howson & Howson, for plaintiff
E. D. Robbins, for defendant.

PLATT, District Judge. Since 1866 the complainant and its predecessor have been continuously engaged in the city of Philadelphia in the manufacture of hardware. The complainant succeeded to the business of its predecessor, the Enterprise Manufacturing Company of Pennsylvania, in the year 1893. During the year 1874 its predecessor commenced the manufacture and sale of a line of coffee mills of varying sizes, adopting therefor a certain characteristic shape, design, color, and ornamentation. Said coffee mills, which have been continuously and uniformly numbered 0, 1, 2, 3, 5, 7, and 9, according to size, have since 1874 been manufactured by the complainant and its predecessor, and sold in large numbers, reaching about $75,000 during the year just prior to this suit. The characteristic shape, design, color, and ornamentation originally adopted for said coffee mills have been retained without change to the present day, other sizes, with different numbers, being added from time to time. Nearly all of the mills are of the same type, and have the same characteristic shape and appearance, varying only in size, the mills having fly wheels of a particular design, and being finished in red and blue, with decorations in gilt and colors. Nos. 0 and 1 are without fly wheels, and are finished in black, with decorations in gilt and colors. Samples of Nos. 0 to 9, inclusive, are in evidence. In 1876 the complainant's predecessor also commenced the manufacture of a set of mills, numbered 2½, 4, 6, 8, 10, 14, 16, and 18, whose shape, design and color, decoration and general appearance, differ in no wise from the mills heretofore mentioned, save that a nickle-plated hopper is substituted for the hopper of the other mills. The sale of this line of mills has been continuous, and the appearance has remained the same throughout. Other sizes, with other numbers, have likewise been added. A specimen of No. 2½ is in evidence as a sample of this line of mills. The specimens of complainant's mills introduced in evidence are the important selling sizes, and they show the shape, design, coloring, and decoration of the entire line of complainant's coffee mills. The complainant's mills, which are known throughout the trade as "Enterprise" mills, have attained a very high reputation, and are the leading coffee mills on the market. The long-continued and uninterrupted use by complainant and its predecessor, without change, of the characteristic shape, design, coloring, and decoration of said mills, has caused the characteristic appearance of the Enterprise mills to be well-known to the trade, and Enterprise mills are recognized by the trade by reason of their unique appearance.

Defendant, shortly before the filing of the bill in this case, after examining complainant's line of coffee mills, concluded to enter for the first time upon the manufacture of the same line of hardware, and sell in competition with complainant. The defendant, therefore, commenced the manufacture of coffee mills, using parts of mills sold by the plaintiff as patterns wherever it was convenient or profitable to do so. It is now making and selling coffee mills which in all substantial respects are the same goods as those made and sold by the plaintiff,

and intends to make other mills with the later style of hopper, which will be substantially the same goods as those made and sold by the plaintiff. Defendant has placed upon its mills, so produced and sold, the numbers 01, 11, 20, 30, 50, 70, and 90, in every case affixing the number to a size of mill which corresponds with the mill of the plaintiff which bears the numbers 0, 1, 2, 3, 5, 7, and 9. On the mills numbered 0 and 1 the plaintiff places its initials and address upon the base, and in the other sizes its name and address upon the periphery of the fly wheel, through which power is furnished to the mechanism of the mill. The defendant at one time failed to place any name upon any part of the mills which it produced of the type of plaintiff's numbered 0 and 1, but it soon avoided that error, and has for the most part always placed its initials and address upon that type at the base, and his always placed its name and address upon the periphery of the fly wheels of the mills of the other type. The address in either type of mill would be hidden from the view of a purchaser looking at the mill from the front, and his first impression would necessarily be gained from the distinctive appearance of the mill itself.

Upon these facts, there really seems to be no room left for serious contention. The plaintiff's case comes perilously near to being one of trade-mark law, pure and simple. For many years it has, without deviation, so prepared its coffee mills, by the use of various devices constantly employed, that they had come to be generally known as the "Enterprise" mills, and of the plaintiff's manufacture. If it had adopted one distinguishing and identifying mark or device for that purpose, and had succeeded with the one as it has with the many, a trade-mark case would be here, and the equity jurisdiction would be undisputed. If any mistake has been made, it grows out of the abundance of devices adopted; but, multitudinous as they are, their constant use as an identifying collocation of devices is admitted. Any possible weakness from the standpoint of a technical trade-mark case renders the situation exceptionally strong when we come to consider the facts from the standpoint of unfair trade and competition.

The boldness and evident sincerity exhibited by the defendant, which may be gathered from its answer and from the brief of counsel, is a refreshing combination. In the answer it says that it is doing what the plaintiff says that it is doing, and that it has an inherent natural right to do so, and proposes to do the things which it is alleged that it threatens to do, and that such action also is right and proper and defensible. In the brief the position is further emphasized, as, for example:

"Plaintiff's grievance is that the defendant is showing to the trade that it is making a line of goods of which the plaintiff has enjoyed a monopoly, and which it desires without a patent to still monopolize."

"The plaintiff seeks to secure by a decree of this court a monopoly of the manufacture of a certain set of unpatented coffee mills. The defendant, on the other hand, claims the right to make and sell goods exactly like those which the plaintiff has been making and selling."

"The defendant judged that it was wiser to offer to the public a coffee mill of a form and appearance such as they were known to like. The mills made by the plaintiff evidently met with public favor, both on account of their mechanical efficiency as grinding machines, and also on account of their pleasing appearance as articles of furniture. The defendant accordingly

determined to make its mills like those of the plaintiff both in effectiveness of mechanical construction and attractiveness of appearance."

The fallacy of the defendant's contention is evident, and I am entitled to no particular credit for pointing it out, because numerous judges have called attention to a like fallacy heretofore. The plaintiff claims no monopoly in the manufacture and sale of coffee mills. The world at large and its products are open to the defendant. It can ransack the universe, and, avoiding possible patents, put together and market what it will in the way of coffee mills, with this one exception, it shall not so arrange its materials and so dress its goods as to produce and market a coffee mill which will be liable to be mistaken for the mills upon which, by long and persistent effort, the plaintiff has been enabled to obtain a distinctive reputation. The very cases cited—and I assume that no stronger ones exist—fail obviously to support the contention.

Fairbanks v. Jacobus, 14 Blatchf. 337, Fed. Cas. No. 4,608, very truly says that, apart from patents and designs, any one may make anything in any form, and may copy with exactness that which another has produced, "unless he attributes to that which he has made a false origin by claiming it to be the manufacture of another person"; and further, "what is not free is to pretend that a scale is made by one person which is in fact made by another."

Flagg Mfg. Co. v. Holway, 178 Mass. 83, 59 N. E. 667, is equally impotent. In that case the master laid down this principle "that no one shall by imitation or any unfair device induce the public to believe that the goods he offers for sale are the goods of another, and thereby appropriate to himself the value of the reputation which the other has acquired for his own products or merchandise." The master further found that there was no evidence of actual deceit, or of an actual attempt to deceive. He recommended a decree in a certain form; the trial court went beyond his recommendation; and the Supreme Court, speaking through the now Mr. Justice Holmes, sustained the master. The master had sustained the infringement, although in respect of the zithers in controversy there were minor differences in dress, and although one bore the name "Regent" on a plate, and the other bore the name "Germania," and although one was marked "No. 5," and the other "No. 7." He found that they would be mistaken one for the other, and also that it is not necessary that the imitation should be so close as to deceive people when they are placed side by side.

And, to clench his contention, counsel in the case at bar cites Globe Wernicke Co. v. Fred Macey Co. (C. C. A.) 119 Fed. 696. This is from the Circuit Court of Appeals of the Sixth Circuit, and is one of the latest deliverances upon the question of unfair competition. The decision is authoritative as a federal decision, and peculiarly so by reason of the high character and learning of the members composing the tribunal, and I am at a loss to know why my attention has been directed thereto. If counsel will read page 704 again, he must see that the authority is controlling against him. Let me quote for his benefit:

"It is not alleged that the defendant represents to the public that the book-cases are of the complainant's manufacture, but only that it makes bookcases and sections in the same sizes, styles, varieties of woods, and finish as the complainant, and that by reason thereof the public are misled."

And again:

"Without doubt a party may adopt distinguishing marks to denote the origin of production as being his own, or he may adopt some other peculiar method of distinguishing his own goods, and thus retain the benefit of the good reputation which he had acquired for them."

And again:

"In the present case the complainant does not rest upon the adoption of * * * special characteristics of any kind, but upon the use of the common features which pertain to the articles made and sold."

Let me suggest that the reason so few cases are found from which earnest ingenuity can even claim to find countenance for such action as that which is herein divulged is because experienced business men do not as a rule attempt such a thing. The courts are constantly endeavoring to uphold and enforce commercial morality, and afford protection to honest enterprise and skill. Justice would be sadly misnamed if, through her equitable arm, she was unwilling or unable to protect the plaintiff in a case like the one at bar. It is unavailing for the defendant to hold aloft the white flag of peace, and, under its supposed protection, to invade and lay waste the plaintiff's well-earned territory. On the question of actual intent to deceive, the law is positively clear that the intent may be inferable from the circumstances of the case. In other words, every one is held to be accountable for the natural and probable result of his acts.

I shall now make my last quotation from authoritative and controlling law—N. K. Fairbank Co. v. R. W. Bell Co., 77 Fed. 877, 23 C. C. A. 554. The Circuit Court of Appeals for my own circuit, speaking through Judge Lacombe, says:

"Business men of ordinary acuteness who wish to establish a distinctive reputation for their goods with the general public, who seek to have such goods so arrayed that they will always be unmistakably recognized by the public, certainly do not begin by assimilating the elements of their design to those of some competing manufacturer; when they are found doing this, it must be assumed that for some reason or other they prefer to have the goods arrayed, not in a distinctive dress, but in one resembling their competitor's."

What will that court say, if a case comes before it in which, on the confessed facts, the defendant not only assimilates the elements of the plaintiff's design, but, with an air of bold defiance, imitates the plaintiff's goods with painful minuteness, and asserts an inherent right to do so.

The whole case resolves itself down to this: Has the defendant, by placing its name in some instances, and in others its initials, upon its coffee mills in the manner shown, sufficiently distinguished them so that likelihood of misconception by the ordinary purchaser, acting in the ordinary way, is eliminated? It failed to prevent one customer from sending the defendant's mill to the plaintiff for repair, and such a demonstration of fact is worth any amount of hypothesis. If the defendant was excessively anxious to keep off the plaintiff's territory,

why did it not make some change in color, configuration, or design? The confusion could have been avoided with ease. He prepared the couch with eyes wide open, and he ought to occupy it now with grace. The absolute similarity of the mills in an almost endless variety of ways is so marked, the finger directing the purchaser to the plaintiff is so imperative, that it cannot be possible that the letters on the periphery of the wheels could blot from the ordinary mind the forceful evidence of plaintiff's production which the extremely attractive collocation of colors, shape, and design presents. When the first glance of the eye fixes the idea of origin firmly upon the mind, a minor detail must in the ordinary case pass unnoticed. By dint of comparison and constant repetition in the quiet of the courtroom, such a detail may grow distinct and exceedingly luminous, but in the crowded store, in the rush and hurly-burly of everyday business life, it would fade into nothingness when opposed to the general attractiveness of the entire structure. That the defendant puts into the hands of the retailer or jobber the means of deceiving, whether with or without intention, is too obvious to deserve further discussion.

It is well also to keep in mind the way defendant treated the matter of numbers. The explanation is unsatisfactory, and does not convince me that their use was such as to leave no doubt about the defendant's motive. If the defendant had made its coffee mills so constructed and dressed that their appearance had marked them as distinctively its product and prevented any confusion with the plaintiff's goods, it might perhaps have used the numbers which it did use, with propriety, and with equal propriety could have used the exact numbers applied by the plaintiff to its goods; but, as the case stands, the use of the numbers with such slight change only intensifies the injury, since it furnishes an additional means of creating confusion, misapprehension, and deception. Their use also furnishes a strong reason for doubting the absolute good faith of the defendant, the immaculate purity of its motive. And on this branch of the inquiry let me offer this last word: If the defendant had the courage of its conviction, why should it have stopped the exhaustive simulation of the plaintiff's goods when it reached the point of placing thereon certain usually harmless numbers which are understood by the trade to be used for the sole purpose of indicating size?

The only question open is as to the extent of the relief to be granted. The injunction should be broad enough so that, while not interfering with the inherent right of the defendant to make coffee mills of such design, shape, and dress as it may please to employ, it will prevent said defendant from marketing a mill, not only such as it now markets and threatens to market, but any mill which, by reason of its shape, design, and arrangement of color and number, shall so resemble the coffee mills of the plaintiff as to be likely to create a misapprehension in the minds of the purchasing public of average intelligence, and to tend to lead the ordinary consumer to mistake the mills of the defendant for the mills of the plaintiff.

Let an injunction issue in accordance with this opinion, and let the matter go to a master for an accounting.