## LUMINOUS UNIT CO. v. R. WILLIAMSON & CO.

(District Court, N. D. Illinois, E. D.   March 28, 1917.)

### No. 729.

1. PATENTS ⬅️328—VALIDITY AND INFRINGEMENT—ELECTRIC LAMP.

   The Guth patent, No. 1,076,418, for an improved electric lamp for semi-indirect illumination, is for a new and very useful combination of old elements, and, while narrow, was not anticipated, and discloses invention; also *held* infringed.

2. PATENTS ⬅️328—VALIDITY AND INFRINGEMENT—ELECTRIC LAMP.

   The Guth patent, No. 1,082,322, for an electric lamp, *held* narrowly valid in the precise form of device shown, but not infringed.

3. TRADE-MARKS AND TRADE-NAMES ⬅️68—UNFAIR COMPETITION—NATURE OF WRONG.

   The gist of the legal wrong of unfair competition is the invading by one of the right of another by procuring the sale of his own goods through express or implied misrepresentation that they are those of his competitor.

   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 79.]

4. TRADE-MARKS AND TRADE-NAMES ⬅️70(1)—UNFAIR COMPETITION.

   The adoption of necessary elements of mechanical construction, essential to the practical operation of a device, and which cannot be changed without lessening its effectiveness or materially increasing its cost, affords no presumption of an intent to compete unfairly; but one is not permitted to copy immaterial features of another's product, when to do so involves misrepresentation as to origin.

   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81.]

5. TRADE-MARKS AND TRADE-NAMES ⬅️70(1)—UNFAIR COMPETITION.

   A defendant *held* chargeable with unfair competition in unnecessarily imitating the appearances of electric lamps made and sold by complainant.

   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81.]

In Equity.   Suit by the Luminous Unit Company against R. Williamson & Co.   On final hearing.   Decree for complainant.

Harry Lea Dodson, of Chicago, Ill., and Zell G. Roe, of Des Moines, Iowa, for plaintiff.

A. Miller Belfield and Culver, Andrews & King, all of Chicago, Ill., for defendants.

SANBORN, District Judge.   Infringement suit on two patents issued to Edwin F. Guth, with a second claim for unfair competition; the parties being citizens of different states, and $5,000 damages claimed.   The patents involved are for an improved electric lamp for semi-indirect illumination, called the Braskolite, and are numbered 1,076,418 and 1,082,322.   Defendant's lamp is known as the "400 Unit."

[1] The two important questions are the validity of the first patent and the alleged unfair competition, since there is very little difference between the Braskolite and the 400 Unit.   These fixtures seem to have taken their final form, and that form was reached by the Braskolite, as shown in the patent.   It has not been improved on, although the most

---

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

persistent effort to do this has been made. Mr. Verhunce, defendant's manager, thus testified on the point:

"Q. This all tends to show that the Braskolite pretty nearly hit the middle of·the bull's eye, doesn't it? A. I do not think there is much doubt about it. They have got the cheapest form of production that could be devised. Q. Like the rubber-tired wheel, it cannot be improved on. A. You could not make it much different from that form, without making it cost more, or detracting from its appearance, or otherwise making it inferior."

It is upon this basis that defendant claims there cannot be any decree for unfair competition under the rule of the vacuum cleaner decision, cited later. The lamp called the Braskolite, made under the earlier patent, is indeed a very beautiful one, of very high efficiency. It consists of a circular canopy about 16 inches in diameter, with a plain, flat white lower surface for better reflection, and an electric lamp in a suspended, inverted glass bowl just below it, and is described by Professor Mohr as follows:

"It consists of a reflector, or a canopy especially designed to act as a reflector, and luminous bowl in relative position, and a depending lighting fixture lamp, depending down into the bowl, into the luminous bowl, all three of which elements forming to make a symmetrical relative connection between those three, governing the light so as to throw it down into a useful plane."

"It has a decided advantage, one that I immediately recognized as a competitor. It has a perfect diffusion in so far as the useful area is concerned, and that is what we illuminating engineers are striving for. *It accomplishes what no other unit previous to it had accomplished.* It acted both as a quality—I mean by that the quality of light was of such a nature, due to the fact none of the rays as they came out of that bowl, as reflected to the upper reflector and back into the room, came in contact with anything that might absorb the spectrum of the original lamp rays, or the rays. It therefore always was a white light on the working plane."

Plaintiff's counsel also examined a large number of managers of lighting fixture houses, in some 18 states. Their almost uniform testimony was that the impression made on them by the Braskolite was that it was something entirely new, absolutely new, a new departure in lighting fixtures, making a large saving in current, better diffusion, very efficient, "the greatest light giver of any fixture within my knowledge," furnishing an ideal and perfect ceiling as a reflecting surface, a simple and original· conception.

Claim 2 of the first patent reads:

"In a lighting fixture, the combination, with suitable ceiling connections, of a lamp socket attached thereto, a canopy covering said ceiling connections and lamp socket, said canopy having a wholly flat lower surface adapted to reflect light, a translucent light diffusing bowl positioned below and opening toward the central portion of the flat reflecting surface, the area of the bowl opening being less than that of the said reflecting surface, a lamp in the lamp receptacle and extending into the bowl, means for suspending the bowl so that light passing downwardly through it will be unobstructed, the bowl, lamp, and reflecting surface being positioned with relation to each other to cause substantially all the rays of light from the lamp to be directed downwardly and distributed in a diffused condition over the entire surface of a horizontal plane beneath the fixture and of greater reflecting area than the reflecting member."

Of course, the inventive notion must "emerge from the description," as·Judge Grosscup said in State Bank of Chicago v. Hillman, 180 Fed.

732, 104 C. C. A. 98, and the point is made by defendant's counsel that the patent does not call for a white reflecting surface, but for "an opaque or translucent glass canopy." However, the inventor clearly intended that the canopy should reflect all the rays coming from the lamp to the under surface of the canopy. He says that part of them will go through the bowl, and that practically all the rays are brought to the working plane (the "useful plane"), instead of directing them or permitting a large portion to pass to the ceiling, to be reflected thence to the working plane. The "principle of the invention" clearly requires an opaque reflecting surface, so that the claims, where they say that substantially all the rays are to be directed downwardly, do not go beyond the description.

It is true, and without dispute in the evidence, that all the elements of this combination are old. The broad idea of a semi-indirect lighting fixture, with an overhead reflector and a translucent bowl in spaced relation to a reflector, and containing a lamp arranged within the bowl, was old. This is shown by the prior art on paper, and by the Bredsvold fixture in evidence. But this fact is not decisive on the question of validity, because this combination was new, and produces a new and most useful result, never before obtained in any of the prior art structures. It is indeed narrow, but defendant is at liberty to use Bredsvold, or any other prior fixture, instead of taking the Braskolite with almost exact imitation.

One of the witnesses says that he attributes the increased efficiency of the Braskolite over the other fixtures—

"to the judicious construction of the same in permitting part of the light of the incandescent lamp to radiate unobstructedly in the plane of the artificial ceiling reflector, where it is most desirable that this should be so, and in breaking up the downward rays through the bowl in such a manner as to obtain illumination of substantially equal intensity in approximately horizontal plane from the plane of vision, and a construction by which the relative position of a source of light to the glass globe and reflector was always insured to be the proper one to obtain the maximum of results."

It is also a unitary structure, in the sense that it may be hung in any position without any modification due to its surroundings. It fits in anywhere, and produces substantially the same beneficial result in any position. The first patent should be sustained, not broadly, but as a meritorious and successful combination, with a beneficial result, unless it was anticipated by the prior patents and publications in evidence, or by the Bredsvold fixture.

A number of prior patents were discussed by Mr. McElroy for defendant and Prof. Mohr for plaintiff in reply. They all resemble the Braskolite in some respects, but none of them is a clear anticipation. The same is true of the Ryan patent, issued later, but applied for before the Guth patent in suit, No. 1,076,418. The book by Prof. Jackson shows a similar structure with an entirely different reflector. No anticipation of the first patent is shown.

The Bredsvold fixture in its present condition does not anticipate, because about half the light goes through or is absorbed by the canopy, and a considerable amount in a horizontal direction. The original fixture was not produced, several changes having been made from time

to time; but the testimony is clear that it was made in 1912 in substantially its present shape. Bredsvold had an eye for beauty, but no conception of the Guth Braskolite. Mr. Guth knew nothing of the Bredsvold fixture until after he had applied for his patents.

In respect to infringement, defendant's 400 Unit is slightly distinguished from the Braskolite in one respect only, by the placing of a small boss or downwardly extending circular flange in the middle of the canopy, where the lamp support.extends through it. While the Guth claims require a flat surface, the 400 Unit is not. sufficiently distinguished to escape infringement, especially as the fixture as a whole is so much like the Braskolite that it is easy to confuse them.

[2] The second patent, No. 1,082,322, for the suspension fixture, is narrowly valid in its own precise form, but the defendant's device is so distinguished. as not to infringe.

The second cause of action, for unfair competition, presents interesting questions. Defendant tried to make a different fixture, but found that Guth had made one which apparently cannot be changed, except in appearance, without greater expense, nor without destroying symmetry and efficiency. So defendant appropriated it bodily, with a single change. It put a boss in the center of the canopy. The two can be distinguished on examination, but are easily confused. The secretary of the company was asked how they came to produce the 400 Unit, and he said they had in mind the Braskolite.

[3] The essence of unfair competition is indicated by its legal name. It is fraudulent competition in trade. Those in similar business may freely compete so long as they do not appropriate the reputation of a competitor's goods. Fair competition is encouraged by the law. Even where a device has reached its final functional form, like a pair of shears, or an electric motor, a competitor is not allowed to pirate the exact design of another for the purpose of deceiving the public by misrepresenting its origin and passing it off as produced by the latter. The gist of the legal wrong of unfair competition is invading the right of another by procuring the sale of his own goods through express or implied misrepresentation that they are those of his competitor.

The right of one who has produced a new form of device, and built up a trade upon it, is like the patent right. It is not an estate or interest which he can sell to another, but merely a right of exclusion. The patentee may exclude all others from making, selling, or using the patent form. He cannot license or convey anything more than the same right of exclusion. So the owner of a fixture, machine, or device, patented or unpatented, who has obtained a trade in it, may simply exclude others from taking away that trade when they deceive the purchasing public as to the origin of the goods sold by them. Counsel for defendant correctly defines unfair competition thus:

"Briefly, it consists in misrepresenting the origin of the goods, or their source of manufacture or distribution. That is the one essential, cardinal element of the whole matter. Without it there can be no case of unfair competition whatever. We may add that misrepresentation as to the origin of the goods may, of course, be either expressed or implied. If a manu-

facturer makes his labels or boxes so similar in appearance, or unnecessarily colors or ornaments his article so much like the other article that purchasers are likely to be deceived as to the origin or source, this fact may be an element of evidence that he has adopted those colors or labels or outward appearances for the purpose of assisting him in misrepresenting the origin of the goods, and in palming off his goods as those of the other manufacturer."

[4] Counsel go on to state an exception established by such cases as Pope Automatic Co. v. McCrum-Howell Co., 191 Fed. 979, 112 C. C. A. 391, 40 L. R. A. (N. S.) 463, relating to a vacuum cleaner, and Marvel v. Pearl, 133 Fed. 160, 66 C. C. A. 226, relating to a syringe. The exception referred to is that, where the particular form is adopted to carry out economic, structural, or functional requirements, such act is no evidence of fraud or unfair competition. Necessary elements of mechanical construction, essential to the practical operation of a device, and which cannot be changed without either lessening the efficiency or materially increasing expense, afford no presumption of an intent to compete unfairly. As I understand the rule of the vacuum cleaner case, a manufacturer may copy the functional features of an existing device, so long as he does not reproduce mere details animo furandi. If he seizes upon immaterial features, such as color, with intent to appropriate trade which belongs to another, he is liable for unfair competition, if the case involves misrepresentation as to origin, Yale & Towne Mfg. Co. v. Alder, 154 Fed. 37, 83 C. C. A. 149; Enterprise Mfg. Co. v. Landers (C. C.) 124 Fed. 923; Consolidated Ice Co. v. Hygen Distilled Water Co., 151 Fed. 10, 80 C. C. A. 506, O'Connell v. National Water Co., 161 Fed. 545, 88 C. C. A. 487; Yale & Towne Mfg. Co. v. Worcester Mfg. Co. (D. C.) 205 Fed. 952; Marvel v. Pearl and Pope Automatic Co. v. McCrum-Howell Co., supra.

[5] That the Braskolite had become favorably and widely known throughout the country is fully established by the evidence. Consequently the appropriation of it by the defendant was unfair, and enabled it at once to take advantage of plaintiff's outlay and enterprise and trade on its reputation. Defendant tried to find an equivalent form which would not so closely resemble the other, but, finding it difficult to do this in respect to the canopy, concluded to adopt the device as a whole. The exact shape of the bowl is not functional, nor its markings, nor the number and style of hangers. The unique and attractive style of the Braskolite indicates origin in the most effective way, but defendant calmly takes it over, and then protests that there is no proof that the public is deceived. That confusion in the minds of dealer and buyer should have resulted was inevitable. The only distinguishing feature is the boss, and the two lamps were before me for hours before I noticed it. Defendant could have so changed its device as to avoid this confusion, without interfering with economic, structural, or functional requirements, because there is nothing in the shape of the bowl which is essential. This is a clear case of implied or circumstantial proof of misrepresentation of origin. If the shape of the bowl were functional, as its color is, and as the canopy is, defendant's act would be damnum absque injuria. I think it is established by the proof that defendant did not in good faith use reasona-

ble diligence to avoid deceptive resemblances which might mislead the trade, and that plaintiff is entitled to injunction and damages.

There should be a decree affirming the validity of both patents, holding the first infringed, and the second not, with an injunction against further infringement and for an account of profits; also an injunction against unfair competition and for the damages thereby caused. Costs against defendant.