## REFLECTOLYTE CO. v. LUMINOUS UNIT CO.*

## LUMINOUS UNIT CO. v. REFLECTOLYTE CO.

Circuit Court of Appeals, Eighth Circuit.
June 10, 1927.

Nos. 7445, 7548.

1. **Patents ⊚⇒328—Reissue 14,680, for lighting fixture, held invalid for want of invention.**

Guth reissue patent, No. 14,680, for lighting fixture, *held* invalid for want of invention.

2. **Patents ⊚⇒168(2)—Patentee and assignee are estopped to assert that elements renounced and abandoned constitute equivalents.**

Patentee and his assignee are estopped to assert that elements which were renounced and abandoned in combination constitute equivalents, though in fact they may be.

3. **Patents ⊚⇒168(2)—Applicant, after narrowing claim by introduction of new element, cannot, after issue of patent, broaden claim by dropping such element.**

Where applicant for patent to cover new combination is compelled, by rejection of his application by Patent Office, to narrow his claim by introduction of new element, he cannot, after issue of patent, broaden his claim by dropping element which he was compelled to include in order to secure patent.

4. **Patents ⊚⇒17(2)—As between invention and mechanical skill, it is not necessary to find all elements in one patent, to establish defense of noninvention.**

As between invention and mechanical skill, it is not necessary in a developed art to find all elements in one patent for purpose of establishing defense of noninvention; it being equally effective for that purpose if they are found in different patents, some in one and some in others.

5. **Patents ⊚⇒26(1¼)—New combination, consisting of old elements functioning in same way and producing same result, is not "invention."**

A new combination, consisting of old elements functioning in the same way and producing the same result, with perhaps difference in degree only, as that of prior patented structures, *held* not to constitute "invention."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Invention.]

6. **Courts ⊚⇒89—One should not be cut off under rule of stare decisis until rights are fully adjudicated.**

One ought not to be cut off under rule of stare decisis until his rights have been fully adjudicated.

7. **Patents ⊚⇒118—Patent with description so vague and uncertain that device cannot be constructed, except by independent experiments, is void (Comp. St. § 9432).**

If description of patent is so vague and uncertain that no one can tell, except by independent experiments, how to construct patented device, patent is void, since object of Rev. Stat.

*Rehearing denied September 6, 1927.

§ 4888 (Comp. St. § 9432), requires that it apprise the public of what patentee claims as his own, courts of what they are called on to construe, and competing manufacturers and dealers of exactly what they are bound to avoid.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Suit by the Luminous Unit Company against the Reflectolyte Company. From a decree enjoining defendant from making or selling an alleged infringing structure, and denying plaintiff profits and damages, defendant appeals, and plaintiff cross-appeals. Reversed, with directions, on defendant's appeal, and plaintiff's cross-appeal dismissed.

Dodson & Roe, Harry L. Dodson, and Zell G. Roe, all of Chicago, Ill., for plaintiff.

Paul Bakewell, of St. Louis, Mo., for defendant.

Before LEWIS and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

LEWIS, Circuit Judge. On a bill in equity brought by Luminous Unit Company (called plaintiff) against Reflectolyte Company (called defendant) the court, after final hearing found (1) Reissue Patent No. 14,680, for lighting fixture, to be good and valid; (2) that it was the property of plaintiff; (3) that defendant had infringed on claim 1 of said patent (the only claim involved in the suit) by manufacturing and selling its structure; and thereon defendant was perpetually enjoined from further making, selling and offering for sale its alleged infringing structure. From that decree defendant appealed.

The defendant in its answer denied both invention and infringement, and plead a large number of prior patents and publications as anticipations of plaintiff's structure.

The Reissue Patent on which suit was brought was to E. F. Guth, as was the original which he and his assignee, the plaintiff, surrendered for cancellation when the reissue was made July 1, 1919. Guth filed application for the original patent on October 18, 1912, and it was issued October 21, 1913, as No. 1,076,418. The drawings, specification and claims 1 and 2 are identical in the original and reissue, but the latter added a third claim which the original did not have. The specification of each calls for a lighting fixture for semi-indirect lighting; and, speaking now in general terms, the structures of both plaintiff and defendant consist of an electric light, a reflecting member over the light and a translucent light diffusing bowl under and near the light, the bowl being open toward the reflecting member, thus causing the light which does not pass through the bowl to be reflected from the inner surface of the bowl upward against the reflector and thence reflected downward and outward, as well as other rays which pass direct from the source of light to the reflector. In each there are means for suspending the bowl from the reflecting member by rods or other appliances, but there is no controversy about that. Guth had no patent on the parts,—the light, the bowl and the reflector. They were all old. His claimed conception was for a new combination of these parts in their relations to each other. This is demonstrated by the file wrapper and the claims themselves. When Guth entered the field in 1912 it swarmed with lighting fixtures called for by domestic and foreign patents, all having the three elements —a source of light within a bowl, the bowl opening upwardly toward a downward reflecting surface, the bowl acting as a shade to break the glare and diffuse the rays that pass through it, and casting upward the rays of light that did not pass through it on to the reflecting member, which diffused them and the rays direct from the source of light, and cast them all downward. Most of the reflectors in prior patents over the source of light were wider than the bowl opening, as is Guth's. Their reflecting surfaces were of many different shapes, concave, some conelike, some flat throughout and parallel with the ceiling above, some divided into plane segments at different angles to the horizontal, and one at least was in corrugated circles. So confronted, Guth for his specification in his original application said:

"The lower surface of the canopy (his reflector) is preferably flat and parallel with the ceiling and serves as a reflecting surface to reflect the rays of light both downwardly and toward the walls of the room. * * * In the use of the fixture a portion of the rays of light will pass through the bowl, being diffused and softened thereby. Other rays will be reflected from the inner reflecting surface of the bowl to the outer surface of the canopy and there reflected outward and downward, and still another portion of the rays will be directly reflected by the canopy."

He presented nine claims. They called for a reflecting member "having a substantially flat reflecting surface." There were many hearings. All of the claims were rejected by the Examiner, or in part withdrawn, and new ones filed. This occurred several times. Finally the new claims called for a reflector with a flat reflecting surface. The

Examiner cited Stieringer No. 253,955, issued February 21, 1882, which shows a flat reflector in the drawings, but Guth's counsel argued that Stieringer's specification called for a reflector that "should be flat, parabolic, or trumpet-mouthed," whereas Guth's reflector "must be flat." He further said: "Stieringer says nothing about the height of his reflector above the light and bowl." The Examiner made other citations and held more than once that a flat reflecting surface was old in the art and did not involve invention. Guth's counsel repeated his argument:

"It is, of course, true that flat reflectors and translucent bowls are old, but it by no means follows that there can be no invention in combining these features, or that there is no invention in *combining a flat reflector, a translucent bowl, and a source of light in a particular way.* It is elementary that old elements may be combined to form a patentable combination."

This argument was pressed in different forms. It was insisted that the claim set forth a relative position of the light, bowl, and reflector not present in the references and which were essential to Guth's invention; and that his reflector must be flat. The argument prevailed and the original patent issued with these two claims, which were repeated as claims 1 and 2 in the reissue, viz.:

"1. In a lighting fixture, the combination with a reflecting member having a horizontally disposed flat lower reflecting surface, of a translucent light diffusing bowl opening toward the central portion of the reflecting surface and positioned a short distance below said surface to provide free space for the passage of light between the reflecting surface and the upper edge of the bowl, the bowl opening being of smaller area than the reflecting surface, bowl suspending means attached to the upper part of the bowl, and a source of light within the bowl and near the reflecting surface, the relative position of the bowl, source of light and reflecting surface being such that all the rays of light not passing directly from the source to the inner surface of the bowl will strike the reflecting surface and be directed downward thereby.

"2. In a lighting fixture, the combination with suitable ceiling connections, of a lamp socket attached thereto, a canopy covering said ceiling connections and lamp socket, said canopy having a wholly flat lower surface adapted to reflect light, a translucent light diffusing bowl positioned below and opening toward the central portion of the flat reflecting surface, the area of the bowl opening be-

ing less than that of the said reflecting surface, a lamp in the lamp receptacle and extending into the bowl, means for suspending the bowl so that light passing downwardly through it will be unobstructed, the bowl, lamp and reflecting surface being positioned with relation to each other to cause substantially all the rays of light from a lamp to be directed downwardly and distributed in a diffused condition over the entire surface of a horizontal plane beneath the fixture of a greater area than the reflecting member."

[1, 2] This suit was brought July 9, 1920, on the reissue patent, and charged that defendant's structure infringed on claim 1. Defendant's lighting fixture, which it claims to have made in accordance with Letters Patent No. 1,121,577, granted December 15, 1914, to Harry C. Adam for semi-indirect lighting fixture (barring means for bowl suspension), does not have a reflector parallel with the ceiling, its reflecting surface is not flat, it is not horizontal. The reflecting surface of its reflecting member is divided into two oppositely inclined planes set at different angles to the horizontal, so that rays reflected from these surfaces were cast down at widely different angles and to different points below. But plaintiff claims, and its expert witness testified, that tests made of the two structures demonstrate that the lighting effect of the two is substantially the same in all respects and that defendant's reflector is thus shown to be an equivalent of plaintiff's. However, the depths of the bowls, the relation between the tops of the bowls and the sources of light, and the distances between the reflecting surface and the bowls and light were not given. This would seem important when plaintiff's claimed combination is borne in mind. Claim 1, if valid, indeed claim 2 also, must rest on "the relative position of the bowl, the source of light and reflecting surface." All else was admittedly old. It was by the inter-relation of bowl, source of light and reflecting surface that Guth sought to differentiate his structure from the prior art. We have seen from the file wrapper that it was not Guth's first intention to restrict his combination to a reflecting member having a flat reflecting surface. His original specification said: "The lower surface of the canopy is preferably flat and parallel with the ceiling." And although this was carried over into the specification issued with the patent, it cannot be doubted on an examination of the Patent Office record that Guth, on objection of the Examiner, narrowed his combination to one having a reflector with a flat reflecting surface. To meet the

Examiner's objection Guth's counsel said an amendment had been made "to bring out the fact that the applicant's entire reflecting surface above the light is flat." In a later response he said: "Applicants' reflector must be flat," and to make the fact impressive he underscored the two words, as we have done. Flat reflectors were old, but Guth, as proceedings advanced on his application, made a flat reflecting surface an element in his combination. It thus appears that Guth, after first proposing that the lower surface of his reflector should be preferably flat and parallel with the ceiling, and substantially flat, as stated in his first offered claims, later yielded to the rulings of the Examiner in rejecting them, and substituted claims calling for a flat reflecting surface. In urging their allowance he said the reflecting surface must be flat. This was a renunciation and abandonment of any other kind of reflecting surface 'in his combination, and he and his assignee are estopped to assert that reflecting surfaces not flat are equivalents, though in fact they may be. He made that a condition for a grant of the monopoly. The law which we think applies to the facts here is stated in I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 429, 47 S. Ct. 136, 71 L. Ed. ——.

[3] "It is well settled that where an applicant for a patent to cover a new combination is compelled by the rejection of his application by the Patent Office to narrow his claim by the introduction of a new element, he cannot after the issue of the patent broaden his claim by dropping the element which he was compelled to include in order to secure his patent. Shepard v. Carrigan, 116 U. S. 593, 597 [6 S. Ct. 493, 29 L. Ed. 723]. If dissatisfied with the rejection he should pursue his remedy by appeal; and where, in order to get his patent, he accepts one with a narrower claim, he is bound by it. Shepard v. Carrigan, supra, 597 [6 S. Ct. 493]; Hubbell v. United States, 179 U. S. 77, 83 [21 S. Ct. 24, 45 L. Ed. 95]. Whether the Examiner was right or wrong in rejecting the original claim, the court is not to inquire. Hubbell v. United States, supra, 83 [21 S. Ct. 24]. The applicant having limited his claim by amendment and accepted a patent, brings himself within the rules that if the claim to a combination be restricted to specified elements, all must be regarded as material, and that limitations imposed by the inventor, especially such as were introduced into an application after it had been persistently rejected, must be strictly construed against the inventor and looked upon as dis-

claimers. Sargent v. Hall Safe & Lock Co., 114 U. S. 63, 86 [5 S. Ct. 1021, 29 L. Ed. 67]; Shepard v. Carrigan, supra, 598 [6 S. Ct. 493]; Hubbell v. United States, supra, 85 [21 S. Ct. 24]. The patentee is thereafter estopped to claim the benefit of his rejected claim or such a construction of his amended claim as would be equivalent thereto. Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 429 [14 S. Ct. 627, 38 L. Ed. 500]. So where an applicant whose claim is rejected on reference to a prior patent, without objection or appeal, voluntarily restricts himself by an amendment of his claim to a specific structure, having thus narrowed his claim in order to obtain a patent, he 'may not by construction, or by resort to the doctrine of equivalents, give to the claim the larger scope which it might have had without the amendments which amount to a disclaimer.' Weber Elec. Co. v. Freeman Elec. Co., 256 U. S. 668, 677 [41 S. Ct. 600, 65 L. Ed. 1162].

"It results that as the claims in suit were limited by the proceedings in the Patent Office to the specific form of a three-point contact lift, they are not infringed by the heels made by the Essex Company which are not three-point contact lifts, their upper side edges having no vertical curve and lying entirely in the same horizontal plane as the rear edge and breast corners. Nor can they be held to be infringements even if we assume that, as asserted, they function in the same manner as three-point contact lifts, and would infringe, as was conceded in the District Court, if the claims were not restricted by the limiting clause and were entitled to a construction warranting a wide range of equivalents. By the limitation of the claims in the Patent Office proceeding to the three-point contact lift the patentee made this precise form a material element and having thus narrowed the claims cannot, as was said in the Weber Electric Company Case, now enlarge their scope by a resort to the doctrine of equivalents. This would render nugatory the specific limitation."

[4] 2. In making any combination it is obvious, and was so in 1912, that the three parts should be positioned by placing the light in the translucent bowl and the reflector over them. The art had long taught that much to everyone. Many patents, domestic and foreign, so provided. They were applied to electric lighting, arc and incandescent, many years before Guth. The one to Stieringer in 1882 called for a flat, parabolic, or trumpet-mouthed reflector above the source of light. The German patent to Winants in 1890 was

for a reflector for diffusing light. A flat reflector above and much wider than the bowl opening is shown in his drawings. In his claim he says that it may be of any desired shape. Nothing is said by either about the spaced relation of the three parts. Their drawings indicate that their reflectors were each farther from the source of light than in the drawings of Guth. But in other prior patents showing various shaped reflectors, not flat, it appears from drawings accompanying them that in some of them the reflectors are farther above the sources of light than is Guth's reflector as shown in his drawings. In some the distances between the two seem to be substantially the same as Guth's, and in others they may be nearer than his. There is no definite guide in the drawings, including Guth's, as to the distance between them. The same may be said as to the depth of the lights in the bowls and the distance between the tops of the open bowls and the reflecting surfaces of the reflectors. As between invention and mechanical skill it is not necessary, in a developed art, to find all the elements in one patent for the purpose of establishing the defense of non-invention. It is equally effective for that purpose if they are found in different patents, some in one and some in others. In Dilg v. George Borgfeldt & Co. (C. C. A.) 189 F. 588, it is said:

"Examining the prior art, we find that the field was quite crowded when the patentees came into it. * * * And, although all the elements of the claim may not be found in any one patent, it is clear that they are all to be found in different patents. No single patent may anticipate, but they all have a bearing upon the question whether invention or mechanical skill was involved or required."

The cases are reviewed and the principle applied in Keene v. New Idea Spreader Co. (C. C. A.) 231 F. 701. It is the claimed relative position of the bowl, light and reflector on which plaintiff relies. Claim 1 places the bowl "a short distance below the reflecting surface," and says "the relative position of the bowl, source of light and reflecting surface being such that all the rays of light not passing directly from the source to the inner surface of the bowl will strike the reflecting surface and be directed downward thereby."

[5] This relative position is found, we think, in prior patents; and Swiss patent No. 46,-098, issued to Schweiz in 1909, provided means to lengthen and shorten the distance between the bowl and light below and the reflector above, whereby different lighting effects could be obtained. Schweiz' reflector was not flat. Stieringer and Winants show flat reflectors in their drawings and indicate a greater distance between reflectors and sources of light than Guth, but there is nothing in Guth's patent and drawings which distinguish it from other patents that had variously shaped reflectors, not flat, as to distances between reflectors and bowls and sources of light. Guth was charged with knowledge of the whole art, including the relative relation of the parts of fixtures. Schweiz had specifically pointed out the difference in lighting effect by changing that distance, as if it were not a matter of common knowledge; and the least informed must have known that a changed effect would be wrought if the reflector should be flat, by placing it at different distances from the source of light. Conceding that Guth's particular combination of these old elements was not to be found in prior patents, nevertheless it seems to us that his idea in that regard was clearly disclosed in the prior art. His combination changed nothing in kind, but only in degree. It was a new combination only in the sense that the distance apart of the old elements was greater or less than in other patents, and whatever that distance might be the mode of operation was the same. The old elements functioned in the same way and produced the same result—barring, perhaps, a difference in degree only—as that of prior patented structures. This was not invention. The state of the art was such as to bring the case within the principle which we stated in Sloan Filter Co. v. Portland Gold Mining Co. (C. C. A.) 139 F. 23:

"* * * The mere carrying forward or more extended application of the original idea, involving a change only in form, proportions, or degree, and resulting in the doing of the same work in the same way and by substantially the same means—is not patentable, even though better results are secured."

See also Western Willite Co. v. Trinidad Asphalt Mfg. Co. (C. C. A.) 16 F.(2d) 446.

But as to both infringement and non-invention, it is vigorously contended that because of litigation in the Seventh Circuit sustaining the validity of the original patent and holding that claim 1 thereof, which is identical with claim 1 in the reissue, was infringed by defendant's lighting fixture, we should follow those cases—not as res adjudicata, but on the score of comity. There were two cases in the Seventh Circuit, brought by plaintiff on the Guth original patent, one against R. Williamson & Co., found in 241 F. 265 and 245 F. 988, and the other against Freeman-Sweet

Co., which is found in 249 F. 876, 253 F. 958, and 3 F.(2d) 577. In the Williamson Case much of the opinion of the trial court (241 F. 265) is devoted to unfair competition, with which Williamson was charged. On the issue of infringement no reference is made to the principle stated in the I. T. S. Rubber Co. Case, supra, nor to the question whether the patentee had complied with section 4888, Rev. Stat. (Comp. St. § 9432), and from what the court there says about the infringing structure in that case it seems to us that the court must have had in mind a different lighting fixture from the one charged to infringe in this case; and on the subject of invention the discussion is brief and general. When that case reached the Court of Appeals it was affirmed in a short per curiam (245 F. 988) without any discussion of the law or facts. In the Freeman-Sweet Co. Case the District Court (same Judge sitting as in the Williamson & Co. Case) again held the Guth original patent valid and infringed by a lighting fixture put out by defendant in the instant case. 249 F. 876. This defendant then gave bond in that case to stay injunctive order pending appeal, and the first matter that came on for hearing in the Court of Appeals was a motion to restrain improper practices of the plaintiff in that case pending appeal. 253 F. 958. The Court of Appeals passed on the merits in that appeal on March 15, 1920 (264 F. 107), which was after the surrender and cancellation of the original Guth patent on which that suit was based. When the mandate went down attention of the District Court was called to the fact that the patent sued on had been surrendered and cancelled, thereupon the District Court vacated its former decree and dismissed that suit. From that order plaintiff there, plaintiff here, appealed, and on appeal the order of the District Court dismissing the suit was affirmed. (C. C. A.) 3 F.(2d) 577. The result was there was no adjudication of the issues in the Freeman-Sweet Co. Case. Furthermore, it is admitted that several patents, alleged in this case as anticipating structures, were not before the court in either of those cases—Swiss patent to Schweiz in 1909, British patent to Watkins in 1897, British patent to Benson in 1881, and British patent to Frauenlob in 1908, each of which cannot be said to be without some weight on the subject of the prior art.

[6, 7] There is another proposition, not made an issue in this case, nor considered in the litigation in the Seventh Circuit, and which we do not mean to decide, but which has some weight on the question of stare decisis. One ought not to be cut off under that rule until his rights have been fully adjudicated. We find nothing in Guth that speaks more concisely and exactly of the distance between the three parts and their relative relations than was shown by the prior art. Guth's claims on that subject are in relative terms. It was a matter of experiment, as much under Guth as under prior patents, to find the desired adjustment in the relation of these parts. It is the object of section 4888 "to apprise the public of what the patentee claims as his own, the courts of what they are called upon to construe, and competing manufacturers and dealers of exactly what they are bound to avoid. Grant v. Raymond, 6 Pet. 218, 247, 8 L. Ed. 376. If the description be so vague and uncertain that no one can tell, except by independent experiments, how to construct the patented device the patent is void." The Incandescent Lamp Patent, 159 U. S. 465, 474, 16 S. Ct. 75, 40 L. Ed. 221. The expressions, "a short distance below" and "near the reflecting surface," are not definitive terms. At best they are fraught with uncertainty. It is more than probable that if several skilled persons, without experimenting, should start out separately to make Guth's lighting fixture, no two of them would be alike in the inter-relation of the three parts; because in that respect the combination was not described by the patentee in full, clear, concise and exact terms. The Court of Appeals for the Sixth Circuit, in American Lava Co. v. Steward, 155 F. 731, in discussing this subject, said:

"But in the then state of the art he was bound to differentiate his structure from those which preceded him; and especially is this so where the whole merit of his invention depends upon some peculiarity in the elements he employs. We think it may be affirmed as a rule resting upon the fundamental principle of patent law that, where the essence of the invention is the location, form, size, or any other characteristic of the means employed, the patentee must distinctly specify the peculiarities in which his invention is to be found."

In an earlier opinion of that court, delivered by Judge Lurton (Germer Stove Co. v. Art Stove Co., 150 F. 141), a patent for improvements in linings for furnaces was under consideration. A combination for the fire pot called for this element: "A grate having the openings therein arranged so as to admit but a small portion of the air necessary for combustion." This was held to be too

vague in description to meet the demands of section 4888. It required resort to experimentation. See also Bullock Elec. Mfg. Co. v. General Elec. Co. (C. C. A.) 149 F. 409; Preston v. Manard, 116 U. S. 661, 6 S. Ct. 695, 29 L. Ed. 763; Walker on Patents, 5th Ed., secs. 174, 178. And so we think the rule of comity, urged upon us, ought not to be applied. Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 S. Ct. 708, 44 L. Ed. 856.

On defendant's appeal the decree is reversed with directions to dismiss the bill of complaint at plaintiff's cost. Plaintiff's cross-appeal from a denial to it of profits and damages is dismissed at its cost.

BOOTH, Circuit Judge, concurs in the result.

PHILLIPS, District Judge, concurs in toto.