BERNHARD ULMANN Co., INC., Plaintiff, v. WOOL NOVELTY Co., INC., Defendant.

Supreme Court, Special Term, New York County, March 5, 1938.

*Briesen & Schrenk* [*Karl Pohl* of counsel], for the plaintiff.

*Underhill & Rubinger* [*Maurice Rubinger* of counsel], for the defendant.

HAMMER, J. In this action an injunction is sought in restraint of alleged unfair competition.

Plaintiff and defendant are competitors in selling yarns manufactured under their orders and other needlework supplies. During 1937 the plaintiff experimented in and developed a yarn of novel construction composed of strands of cotton intertwined with white rayon for hand-knitting garments for the 1938 spring and summer wear. It devised a range of colors and shades blended with the white rayon in anticipation and development of fashion trends. In July, 1937, for the development and promotion of the sale of such yarn plaintiff conceived the application thereto of the word Frappé and its use as a trade-mark and applied for registration, for which certificate No. 352895 was issued by the United States Patent Office on December 14, 1937. Plaintiff designed and designated distinctive labels with a setup of special wordings, color cards with twenty sample strands of an attractive range of twenty colors, both of common variety and also of fanciful names previously coined by a textile color association for general trade use, to which plaintiff also affixed certain arbitrarily selected numbers. After much experimentation the colors and shades mentioned were ascertained to be boilproof and lightfast and the words " Guaranteed Boilproof " appear on the labels applied to the yarn. Color cards, catalogues showing specially designed fabrics on model figures, and display cards were distributed among the trade and instruction books with similar illustrations placed with the yarn among plaintiff's customers for sale to the public. Much advertising and publicity featuring Frappé yarns was used by plaintiff and some of its customers to promote sales. There were sales in July, 1937, and ever since November, 1937, plaintiff has continuously sold such yarn in large quantities. In experimentation, development and promotion of sales plaintiff expended large sums of money. Frappé yarn is sold in two-ounce skeins of approximately 265 yards, twenty to the box. Units of that quantity are prescribed in plaintiff's instruction book for the garments there illustrated for knitting. Defendant is offering for sale and selling a yarn identical in construction, with a range of sixteen color shades, with intertwined white rayon, which, excluding four of plaintiff's, are otherwise identical. Defendant has been using its house name or registered trade name " Polar " on its labels and the secondary name " Frostay " to identify its cotton and rayon yarn. Its testimony is that word occurred to it in August, 1937, when the idea of creating this type of yarn also was conceived. In December, 1937, after rejecting some, it got up its scheme of sixteen colors which had been submitted by its manufacturer. Early in January, 1938, it made up its color card and, having plaintiff's before it, noting the identity of the sixteen colors, being " lazy "

it made same identical with plaintiff's in arrangement of colors, names and numbers also except as to them it prefixed the digit " 1." It, of course, used its trade name Polar and the secondary designation " Frostay " on the cards. It did no experimenting as " it did not take much experimenting to bring out yarn like that." No experimentation was needed about the dyeing. " It is well known and needs no experimentation to know that cotton and acetate cannot be dyed together, that is what they call a cross dyeing." Defendant gave the manufacturer a similar yarn made of rayon and wool and said it wanted the yarn duplicated in cotton and rayon so that it could have it ready for the spring. The dyeing orders were also given to the manufacturer who had the dyeing done. Defendant did no special promotion work and did not have " Frostay " yarn in its catalogue or instruction book. Plaintiff's Frappé yarn sells for six dollars and sixteen cents a box and defendant's four dollars to four dollars and twenty-five cents a box.

Whether the close identity of the parties' yarn is the result of defendant's willful and malicious simulation, as claimed by plaintiff, or of mere coincidence resulting from the operation of the minds of the merchants, seems hardly necessary of determination. Perhaps such minds, spurred on by the necessity of anticipating the requirements of coming seasons, may conceive and in the process of creative genius produce either the same or an identical twin article. It may be due to the association, environment and training of defendant's identical designer or creator who started with plaintiff as a boy and was with it for eleven years of the twenty-nine he had been in the yarn industry. Whatever the causes or reasons, it is clear that defendant's use of the unregistered word " Frostay " in connection with its use for its yarn of a composition, construction, dimension in thickness identical with plaintiff's yarn, with length in relation to weight, so two ounces yield about 265 yards, unusual color range, defendant's sixteen being the same as that same quantity of plaintiff's twenty, the sale of twenty two-ounce skeins to the box, all identical with that of plaintiff, the identity of sequence, colors and names with close and almost identical numbers, the similarity of wording on labels, are calculated and likely to deceive the unwary purchaser desirous of purchasing plaintiff's registered trade-marked Frappé yarn. (*Colman* v. *Crump*, 70 N. Y. 573.) The infringement does not depend upon the use of identical words or that a person looking at one would be deceived into the belief that it was the other. The form and sound are so similar that one not having a clear and definite memory of the trade-mark may be misled. (*Northam Warren Corp.* v. *Universal Cosmetic Co.*, 18 F. [2d] 774; *Coca-Cola*

*Co.* v. *Chero-Cola Co.*, 273 Fed. 755; *Bregstone* v. *Greenberg*, 192 App. Div. 213; *Gehl* v. *Hebe Co.*, 276 Fed. 271; *Lambert Pharmacal Co.* v. *Bolton Chemical Corp*, 219 id. 325; *Wilson & Co.* v. *Best Foods, Inc.*, 300 id. 484; *Industrial Rayon Corp.* v. *Dutchess Underwear Corp.*, 92 F. [2d] 33.) The plaintiff adopted, appropriated and used the trade-mark Frappé prior to adoption, appropriation or use by defendant of the term Frostay. Plaintiff then is entitled to priority. (*Oneida Community, Ltd.*, v. *Oneida Game Trap Co., Inc.*, 168 App. Div. 769; *United Drug Co.* v. *Rectanus Co.*, 248 U. S. 90.) No evidence was presented that any person had been deceived. None was necessary. Plaintiff's proof is sufficient, as it shows injury to its business is imminent. (*Taendsticks-fabriks Aktiebolagat Vulcan* v. *Myers*, 139 N. Y. 364.) Defendant's explanation of its use of plaintiff's color card, the color sequence, names and numbers is unsatisfactory. From it and other discrepancies and apparent insincerities lack of truth could readily be drawn. Perhaps defendant, if it had constructed and dressed its yarn and used a name which did not convey the same idea as plaintiff's registered trade name, might have used with propriety many of the individual items used by plaintiff. The use of these on the color card with practically no change intensified the injury, and presented additional means of confusion and deception. (*Enterprise Mfg. Co.* v. *Landers, Frary & Clark*, 124 Fed. 923; affd., 131 id. 240.) The issue here is not merely the infringement of a trademark. The combination of facts, it being clear plaintiff was first in conception and production, and the practical identity of every item going into the finished product, including its quantity as offered for sale, indicate an intention and practice by defendant to trade upon plaintiff's good will and injure plaintiff by offering a cheaper article calculated and likely to be mistaken by purchasers of plaintiff's yarn. (*Kallus* v. *Bimblick Toy Mfg. Co., Inc.*, 229 App. Div. 313; *Brillo Mfg. Co.* v. *Levine*, 236 id. 488; *Dutton & Co.* v. *Cupples*, 117 id. 172. See, also, cases cited above.)

Both sides have called my attention to the case of *Neva-Wet Corp.* v. *Never Wet Processing Corp.* (277 N. Y. 163), decided March 8, 1938, by the Court of Appeals. In so far as applicable, that decision and authorities cited therein sustain plaintiff's position in this action.

I am persuaded that plaintiff is entitled to the relief sought, with costs. The making of findings and conclusions incorporated in a formal decision has been waived by stipulation of the parties. Judgment may be entered accordingly on notice.